Thank you, Your Honor. May it please the Court, I'm John Capell with the Appellate Staff, Civil Division, U.S. Department of Justice, and I'm representing the appellant, United States, on this appeal. I will attempt to reserve three minutes, or the balance of my time, for rebuttal. The district court erred as a matter of law in holding the United States liable for malicious prosecution in this action that was brought by an independent sovereign, the Spokane Indian tribe, in tribal court under tribal law. It made three errors of law under the five-pronged Washington test for malicious prosecution. It failed to acknowledge that the action in question was instituted and continued by the Spokane tribe, and that there was probable cause for the prosecution, and that it also was not abandoned on the ground. Counsel, let me just clarify. If you misspoke, you said that it erred in deciding it was instituted and continued by the Spokane tribe, but I thought the issue was whether it was instituted and continued by the BIA. Well, it erred in failing to recognize that the action was instituted and continued by the Spokane tribe. Yes, the BIA did not institute or continue the action. But that's what he found, right? The BIA is the tortfeasor in this case, as far as the district court was concerned. That's the district court's view, but it's wrong as a matter of law because the district court really failed to heed the well-settled principle of the independent prosecutorial judgment. Where does that come from? Is that part of Washington law? Well, it comes clearly from U.S. Supreme Court case law and this court's case law, as well as the case law of other circuits. That's what I'm trying to understand. You're invoking the Washington malicious prosecution law. Does Washington, as a matter of its law, adopt that independent prosecutorial discretion rubric, or do they have a statement that's more based on the restatement of torts? Well, Your Honor, I don't really think that there's any distinction. I think that the restatement of torts essentially incorporates this principle, and I don't think that there's anything to the contrary in Washington state law. It's a bedrock principle in this area of malicious prosecution and probable cause that unless the alleged tortfeasor has somehow exercised undue influence or brought undue pressure on the prosecutor, or has actually given the prosecutor false information or has knowingly withheld material exculpatory information, that the prosecutor's determination of probable cause cuts off everything that went before. And Judge Quackenbush found, as a matter of fact, that those conditions had been met, as I understand his ruling. Well, Your Honor, again, we would respectfully disagree with that characterization. It's not a matter of fact. It is whether, on the fact of this case, the district court's ruling is correct or incorrect as a matter of law. And we believe that it's clear, applying the relevant principles, that the district court erred as a matter of law and that it failed to heed the principle of independent prosecutorial judge. Counsel, the problem I have with the position is that it seemed to me that what Judge Quackenbush was saying was that the BIA's agent both provided information to the tribe and also actively assisted the tribe in their prosecutors in going forward. And also encouraged it. And I thought he went so far as to say causally the prosecution would never have happened had it not been for Mr. Little's actions. And further, he said Mr. Little did not disclose all the facts to the tribe. So he didn't disclose the genesis of the complaint in retaliation and some other things. But, Your Honor, it's clear from the record that the tribe was aware of the genesis of the complaint. And the district court's decision in this regard is internally inconsistent because it's replete with statements that the BIA was acting throughout at the behest of the tribe. The judge even used the word at the behest of the tribe, I believe, on page 10 of his opinion and also, again, in pages 32 through 34. And he also refers to the tribe's retaliatory animus and retaliatory motivation. And that is what drove the prosecution from beginning to end. And the tribal prosecutor also testified that she thoroughly evaluated the claim both before and after the U.S. attorney's declination letter. I read what she said, and I also read what Judge Quackenbush said, and in the briefs. And just what bothers me in this case is that the federal government took such an active role in trying to encourage this prosecution, apparently without really a probable cause for it, and with a number of problems that Judge Quackenbush noted. So if there's a question on Washington law, should that be certified to the state Supreme Court? Well, Your Honor, Washington State Supreme Court, as far as I know, has no opinion like Smitty or Owhadi. And Judge Quackenbush's reliance on the restatement for common law, I'm just one judge, but I don't really know why I would think that the state Supreme Court would not follow those principles. Well, Your Honor, in our view, there's no need to certify to the Washington Supreme Court because we believe that it's clear on this record that the district court committed errors of law. But certainly we would not be averse to such a certification if the court deemed it useful. Mr. Coppell, before you move on to another point, I'd like to know, was this particular agent, Agent Garvey, is that how you pronounce it, Garvey? That's correct, Your Honor. I mean, did he attend basic law enforcement training at the Federal Law Enforcement Training Center in Glencoe? Well, I believe he had whatever training was the norm at the time. You don't know. The record doesn't tell me, does it? Well, certainly the record and the U.S. Attorney's declination letter refers to the problems with the training that Agent Garvey might have received. by the BIA, which seemed to influence Judge Quackenbush's view of what happened here. Well, but again, the judge's holding that the BIA was responsible for the prosecution is simply at war with his findings that the tribe was the prime mover from the very beginning and throughout. But you haven't challenged the district court's finding that Agent Little, the IAD investigator, acted with malice, have you? No, we're not challenging the malice holding on appeal. If that's the case, if the agent maliciously, doggedly pursued the prosecution of Agent Garvey for whatever motive, and the record doesn't tell me why Agent Little had it in for Agent Garvey, but with the finding of malice, I guess I have to assume that it was with bad intent. Why does that not support what I think is a mixed question of law and fact on the question of continuing or instigating the prosecution? Well, Your Honor, I'd just point out that, first of all— Could you, in answering that, maybe you could direct us to that finding of the district court. You say that his ultimate conclusion is in error as a matter of law, because I have the same question Judge Tallman does. You keep saying it's all a matter of law, and yet the factual findings that Judge Quackenbush made don't seem to lead inexorably to that conclusion. But you seem pretty sure that it does. Well, Your Honor— What's the factual inconsistency with his ultimate conclusion? The factual inconsistency—again, it's on page 10 of the court's opinion, where he specifically finds that Mr. Garvey and his family suffered substantial emotional distress and turmoil as a result of the wrongful action of the BIA at the behest of and in association with the Spokane Tribal Council and its agents and employees. And that's simply—if that is the case, then it is clear as a matter of law that this action was instituted and continued by the Spokane Tribal Council, and that is fully consistent with the record that the district court itself has acknowledged. Why shouldn't we read that to mean the behest means the letter from the tribal chairman which initiated the IAD investigation, and then Agent Little, acting with malice, dealt in such a fashion with the tribal prosecutors that he kept pushing until charges got filed? But again, the tribal prosecutor itself is an independent actor that benefits from the presumption of independent prosecutorial judgment, and it's entitled to the same respect as the U.S. Attorney's Office. And for instance, if the U.S. Attorney's Office had decided that it was going to prosecute instead of deciding for tactical reasons that it was not going to, certainly there could not have been a malicious prosecution claim here. So is your saying if it had been the U.S. Attorney's Office that filed these charges and Judge Quackenbush had disbelieved the U.S. Attorney that the U.S. Attorney made an independent decision, that that nonetheless would not withstand as a matter of law because the prosecutor testified that he did make an independent decision? Well, Your Honor, conceivably, well, if the record were found to rise to the level of undue pressure, say, from the tribe or falsification of evidence from the tribe, Let me make my question clear. Is the U.S. Attorney as prosecutor word that he exercised his independent judgment at the end of the inquiry, or is the district court entitled to disbelieve that? Well, certainly not the prosecutor's word. It's the record in the case that would be dispositive. What about if he thinks the appearance of the prosecutor in his courtroom testifying to his independent judgment, he doesn't believe him based on his demeanor amongst other things? Well, if it... Does the district court, in other words, treat that statement by the prosecution, the ostensible one who made the decision, as a matter of fact, or what is it? Your Honor, the statement is a matter of fact, but, again, this is all the facts. There has to be evidence in the record of undue pressure, of falsification of evidence, of withholding, of knowing withholding of material evidence, and that's the only way that the word can really be overborne. But why can't the district court listen to the testimony of Margo Hill and the other prosecutor and listen to the testimony of Agent Little, find that Agent Little acted maliciously and that he therefore importuned improperly in the exercise of their prosecutorial discretion? I mean, he is the trier of fact, is he not? We don't have an express adverse credibility finding, but why can't we infer that from his findings of fact and conclusions of law? Well, he's certainly the trier of fact, but, again, this really, that holding is at war with the entire record and with his findings recognizing that the tribe was responsible for the prosecution essentially from beginning to end and that the tribe and there's even reference in the record to Tribal Attorney Hill's statement that she wasn't going to let some cop from Albuquerque make the decision for her. I thought that the tribe initially asked for an investigation, but that it was Investigator Little who made a criminal referral. No, Your Honor. Again, that is inconsistent with the court's finding. The court's finding actually indicates that the decision was made to launch a criminal investigation and then Agent Little was assigned to it, and that's at pages 3 to 5. I'll check the record again. I read what Judge Quackenbush said to read differently on that, but we'll see. But, again, we read pages 3 to 5 and 32 to 34 of the court's opinion as indicating that the BIA initiated a criminal investigation in response to the tribe's resolution and its letter which asked for a full investigation of matters that clearly included criminal matters such as misuse of tribal funds. You're over your time, so you can have a minute for rebuttal when you're... Thank you, Your Honor. Counsel? Thank you, Your Honor. May it please the court. My name is Paul Burns. With me at counsel table is my partner who also tried this case with me, Dana Griffin-Burns. It's my privilege... It's our privilege to represent Dwayne Garvey in this malicious prosecution action against the United States. Mr. and Mrs. Garvey are with us in the courtroom today. I mean no disrespect to my opponent, and I mean no disrespect to the process. But, frankly, Your Honors, when I set about the challenge of drafting the appellate brief in this case, I was tempted to simply say, see attached, and attach Judge Quackenbush's 40-page opinion. As the court has recognized, Judge Quackenbush was the trier of fact in this case. He heard the evidence. He made detailed, thorough, factual findings, and he went beyond that and set forth a thorough, comprehensive analysis of those facts in the context of the law of malicious prosecution under the state of Washington. Counsel, I read very carefully what Judge Quackenbush said, and he's an able trial judge, but I had a concern in reading his opinion and in your briefs that he may have misunderstood the import of a declination letter from a United States attorney. And I have in mind the provisions in the United States Attorney Manual 9-27.220, which instructs federal prosecutors when they are evaluating the facts that are presented in a report of investigation not to file charges unless they are convinced that they are sufficient to obtain a conviction, meaning by proof beyond a reasonable doubt. Judge Quackenbush seems to have read Mr. Shively's declination letter as some kind of a factual determination by a responsible prosecutorial official that there was no probable cause to support the filing of these charges. And I read a substantial portion of the 248-page report of investigation. There's a lot there to, it seems to me, to support a finding of probable cause, particularly with regard to the falsification of records and obstruction of the investigation during the internal affairs investigation. Why didn't Judge Quackenbush err as a matter of law in finding there was no probable cause to support any one of the 22 charges? Your Honor, I want to try to break that question down and respond to it as directly as I can. First of all, I disagree that if the court is suggesting that Judge Quackenbush treated the U.S. Attorney's declination letter as determinative of the issue of probable cause, he did not. Judge Quackenbush properly considered that as a piece of evidence on the issue of probable cause. And I cite, Your Honor, the Bender v. City of Seattle case, which has been cited by both parties and was cited by Judge Quackenbush, 99 Washington 2nd at 582. At page 595 to 596 of that opinion, the Washington Supreme Court says that the subjective opinion of a particular prosecutor on the issue of probable cause is not determinative of that issue. It is a piece of evidence that the fact finder can consider on that issue. But it's the subjective opinion of the prosecutor who made the charging decision. That language from Bender applies not to Mr. Shively, but to Ms. Hill and her colleague in the tribal prosecutor's office, does it not? I think it applies to any prosecutor. In fact, in Bender, several deputy prosecuting attorneys testified. Some testified that they saw probable cause. Mr. Shively, was he a witness at the trial? Well, to the extent that, no, he was not a witness. He wasn't called as an expert on the question of probable cause. And with respect, he was not treated as an expert. His report was considered as evidence on the issue of probable cause by Judge Quackenbush. Judge Quackenbush gave it great weight, no question about it, but he did not find it determinative. He made a point, as we did at the evidentiary presentation at trial, he made a point of going through the entire 248-page investigative report and analyzing the probable cause issue as the fact finder. And he determined, as a matter of fact, under Bender, that there was no probable cause. But Mr. Shively never said there was no probable cause. No. Mr. Shively issued a declination letter, which, as near as I can tell, comports with the provision in the United States Attorney's Manual that I just cited. And I don't think Mr. Shively gave his opinion on whether there was sufficient evidence to go forward to prosecute. Judge Quackenbush took that opinion and considered it on the question of probable cause. It was relevant evidence on the issue. Was there objection by the government to the introduction of Mr. Shively's letter? No. It was stipulated in the evidence. Okay. All right. In any event, I started to say that I was tempted to say see attached. As Judge Quackenbush found as a matter of fact, this prosecution of Mr. Garvey was engineered from its inception by the Bureau of Indian Affairs. As Judge Quackenbush found as a matter of fact, Agent Garvey was a highly respected agent by both the tribe and the BIA in his assignment to the Spokane Reservation. It wasn't until he got crossways with the tribe with respect to the investigation of fellow officers. Counsel, can I interrupt you? Yes. Since you're going to rely on Judge Quackenbush, at ER 33, Judge Quackenbush says, The BIA's internal affairs investigation of Garvey originated from two sources, the Spokane tribe and Garvey's District 5 commander from Billings, Edward Naranjo. The tribe's retaliatory animus toward Garvey for his investigation and tribal dissent could not have been more obvious. And then it goes on, Why does that not support the government's argument that this was action initiated by a sovereign tribe and that Mr. Little may have acted as the investigative agent, but if it was both the tribe's animus and initiation, how does it overcome the notion that at the end of the day, whatever role Little may have played in it, and it obviously was not a very happy one. Nonetheless, as the government argues, as a matter of law, it can't be that you can charge him with it. Well, let's make sure that we understand the facts correctly as found by Judge Quackenbush. Judge Quackenbush found that the tribal council was angry with Garvey and wanted him removed from the reservation as a result of his investigation into what the tribe characterized as pranks by police officers. And so the tribal council sent a letter to the BIA saying, We want Mr. Garvey off the reservation and we want his conduct investigated. The tribal council never suggested that there was any criminal activity on the part of Mr. Garvey and the tribal council did not ask for any criminal investigation of Mr. Garvey. The tribal council said to the BIA, investigate your employee. And the BIA on its own initiative characterized the investigation from its inception as criminal in nature and Judge Quackenbush found as a matter of fact that that was the case. Judge Quackenbush also found as a matter of fact that there was absolutely no evidence whatsoever of any criminal activity on the part of Mr. Garvey prior to the BIA initiating its investigation. It was the BIA's decision from the very beginning to characterize Mr. Garvey's conduct as criminal in nature with absolutely no allegation of criminal activity. Well, what about page 487? I'm looking at the tribal resolution. Whereas the council is also concerned about Investigator Garvey's use of certain funds. He requested to make undercover drug purchases, but which funds he failed to return in full. That suggests criminal conduct. It's a question of fact, Your Honor, whether there was an allegation of criminal activity prior to the initiation of the BIA investigation. Judge Quackenbush reviewed that evidence, reviewed the context of that evidence, reviewed the testimony surrounding that evidence, reviewed the testimony surrounding the initiation of the investigation, and determined as a matter of fact that there was no evidence of criminal activity prior to the initiation of the BIA investigation. There was no allegation of criminal conduct prior to the initiation of the BIA investigation, and it was Agent Little's decision independently to characterize the investigation as criminal in nature from the get-go. What do we know about Mr. Naranjo? What do we know about the basis for his referral to IAD? I took his deposition. He didn't testify at trial. His deposition testimony was admitted in the record. I asked him if he knew anything about whether Mr. Garvey had engaged in any criminal conduct, and Deputy Commander Naranjo said he didn't know anything. Well, why did he say that he referred it for an internal affairs investigation? He didn't. Well, he did. He didn't say why he referred it. And then Agent Little said he got his information from Naranjo, and Judge Quackenbush pointed that out in his opinion, that there was an inconsistency between what Agent Little said about how he got the case and what Agent Naranjo said about how he had the discretion to characterize the investigation as an internal affairs investigation or a criminal investigation. It opted on its own to characterize it as criminal. Wasn't Agent Little also instructed to investigate the supervisors in the Billings office of the BIA? He was by the tribe, and he didn't. By the tribe or by his superiors? Asked by the tribe to investigate Naranjo also. Little went after Garvey mercilessly. There was no investigation, no hint of any approach to Agent Naranjo. Agent Little went after, as Judge Quackenbush found factually from the beginning, Agent Little went after Garvey relentlessly. Can you help me with the question that I asked Mr. Coppell about? And that has to do with the lack of probable cause here. I mean, in looking at the report of investigation, although there were questions about the credibility of some of these drug dealing informant witnesses, why couldn't a tribal prosecutor look in total at all of the evidence that was before her, including the interlocking consistencies in the interviews that they gave to the investigator about money being handed to them, but drug deals not coming together, and then they kept some of the money, but then the rest of it went back to Mr. Garvey, and there's no record, no report of investigation, no accounting for how those funds disappeared? Why doesn't that, as a matter of law, constitute probable cause to suspect that he pocketed the money? Because Bender says it doesn't, Your Honor, because Bender says that the particular opinion... No, no, I'm talking about evidence. I understand, Your Honor. I understand. We're talking about proof beyond a reasonable doubt. We're talking about proof to establish probable cause to support the filing of criminal charges. I understand, Your Honor, and we're evaluating this issue in the context of a malicious prosecution tort case. I'm just talking about, I'm looking only at probable cause now. I've got testimony from five different informant witnesses. I've got testimony from his ex-wife that she saw him take money out of these funds and that he pocketed the money for himself. I've got inconsistencies in the records. I've got admissions by the agent when he's investigated by IAD where he can't account. I've got missing drugs where there were supposed to be drugs. I've got no reports of investigation for drug buys that were attempted. Why can't a prosecutor look at all of that in total and decide that that's enough to establish probable cause to support charging? Your Honor, first of all, I don't know that we've got all that in the 248-page record. I read it in the record. I understand, Your Honor. I understand that as Judge Quackenbush found, as a matter of fact, there was no evidence of any criminal intent on the part of Mr. Garvey. As Judge Quackenbush found, as a matter of fact, there was no evidence of any criminal conduct on the part of Agent Garvey. Again, Your Honor, I come back. The fact that one prosecuting attorney could look at all of that evidence and say, in my view, there's probable cause is not determinative of the probable cause issue in the malicious prosecution case. It's an issue for us as an appellate court to decide, as a matter of law, that we look at the contents of the 248-page report. We also consider the testimony of the prosecutors as to what they did and what they considered, and we make a de novo determination as to whether that record is sufficient  I think that's exactly the point that the Bender case rejected. In Bender, the State Supreme Court looked at the evidence in the underlying criminal prosecution, and it said there's a lot of evidence here that would support a finding of probable cause. But ultimately, that's an issue of fact for the jury, and the fact that one prosecutor thinks that there may have been probable cause is not determinative on that issue. That is exactly what Bender says, Your Honor. I'm not talking about the prosecutors. I'm talking about us as a court of appeals looking at the record, the fact that the district court made a conclusion that he didn't think there was probable cause. In fact, he goes so far as to say that no reasonable person could look at this record and conclude that there was probable cause for any of the 22 charges. And again, Your Honor, he sat as the trier of fact, and the issue in the malicious prosecution case, the issue of whether there was probable cause is a question for the trier of fact. I cited that. I cited the Bender case. Are you familiar with our decision in McConney? It's an in-bank decision that talks about the standards of review applicable to determinations of probable cause. I'm not, Your Honor. I apologize. I won't ask it. I apologize. But I am. But with respect, again, I would refer the court. We're deciding this case under Washington law, and I think Bender is absolutely determinative on the question that you're asking, unless with respect, unless I'm misunderstanding your question, and frankly, I may well be. But as I understand your question, I think Bender answers it on all fours. Okay. Thank you. Is my time up? It is. Thank you, Your Honor. We ask that the decision be affirmed. Thank you. Your Honor, on the issue of probable cause, what opposing counsel just stated is flatly incorrect. This Court said in Vancouver Book and Stationery Company v. Elsie Smith, Perona Typewriters, a 1943 case that's set forth page 20 of our reply brief, that the rule, I'm quoting now, the rule in Washington is that where there is no dispute as to the facts, the question of the existence of probable cause is one of law for the Court. And Bender does not refute that or overrule that. And as this Court stated, as Judge Tallman recognized, this Court's decision in McConnie and countless other cases that are cited in our brief are entirely consistent with that view. So I would completely agree on the probable cause point. It is clear from the record, from Agent Little's report standing alone, that there was probable cause. The Shively report in no way contradicted that or suggested that there was not probable cause. The Shively declination letter simply represented the tactical decision not to prosecute. And I'd even point out that if after the tribal prosecution had been terminated by order of the District Court on habeas corpus, the U.S. Attorney's Office had revisited the issue and decided to prosecute, that would have been supported by probable cause. There would be no basis for a malicious prosecution claim. The fact that there was a declination letter doesn't mean they couldn't have changed their mind. That's absolutely right, Your Honor. And so for that reason, there are three problems. The fact that there was probable cause for it, that it was instituted and continued by the tribe, an independent sovereign whose views are entitled to respect, and that it was not abandoned on the merits are all matters of law why the District Court's decision should be reversed. All right. Thank you very much, Counsel. Thank you. Your time is up. Thank you both, Counsel. We appreciate the argument and the cases submitted. Thank you.
judges: Fisher, Gould, Tallman